UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


LOUISE LIGHTFOOT, et al.,          )
                                   )
             Plaintiffs,           )
                                   )
v.                                 )          Case No. 1:06CV47 RWS
                                   )
S.C. MANAGEMENT, INC., et al.,     )
                                   )
             Defendants.           )


## MEMORANDUM AND ORDER

This matter is before me on Defendant Anthony T. White, M.D.'s  motion to

dismiss for lack of personal jurisdiction.  The issue is whether a single, unsolicited

telephone call from an attending physician in Missouri to a physician in Arkansas

for consultation purposes is a contact sufficient to subject the Arkansas physician to

personal jurisdiction in Missouri.  Because I find that the contacts here are

insufficient to justify personal jurisdiction, I will grant the motion to dismiss.

### I.  Background

Plaintiff Louis Lightfoot is an elderly woman with a history of heart disease.

On February 7, 2003, Lightfoot visited Defendant Amy Lockhert, M.D.,

complaining of shortness of breath and swelling in her lower extremities.  Dr.

Lockhert referred Lightfoot to the emergency room of the Twin Rivers Regional

Medical Center ("Twin Rivers"). Lightfoot was diagnosed with atrial fibrillation, a serious heart arrhythmia, prescribed medication and released. During the following weeks, Lightfoot saw Dr. Lockhert for follow-up treatment and was admitted to Twin Rivers on three occasions from February 7 through February 26 for recurring medical difficulties.

On February 17, 2003, Dr. Lockhert was the attending physician responsible for Lightfoot's treatment at Twin Rivers. Lightfoot's medical records indicate that Dr. Lockhert placed a telephone call from Twin Rivers in Missouri to Dr. White in Arkansas. Over the telephone, Dr. White recommended that Dr. Lockhert place Lightfoot on Rythmol to convert her heart from atrial fibrillation to a normal cardiac rhythm, a procedure known as a cardiovert. Dr. White did not charge a fee for his consultation with Dr. Lockhert. Lightfoot alleges in her complaint that the cardiovert was negligently performed.

While Dr. White admits to discussing medication options regarding Lightfoot during a telephone conversation with Dr. Lockhert, he argues that he has never treated Lightfoot in Missouri and, as a result, is not subject to personal jurisdiction in this case. By affidavit, Dr. White states that he is a resident of Arkansas, is licensed to practice medicine only in Arkansas, practices medicine only in Arkansas, and treated Lightfoot only in Arkansas prior to the initiation of this case.

Lightfoot argues that Dr. White engaged in the practice of medicine sufficient to subject him to personal jurisdiction in Missouri when he recommended to Dr. Lockhert over the telephone that Lightfoot be placed on Rythmol.

## II. Discussion

The plaintiff bears the burden to show that personal jurisdiction exists. Romak USA, Inc. v. Rich, 384 F.3d 979, 983-84 (8th Cir. 2004) (citing Epps v. Stewart Info. Serv. Corp., 327 F.3d 642, 647 (8th Cir. 2003). A prima facie showing of personal jurisdiction over the defendant defeats a motion to dismiss for lack of personal jurisdiction. Lakin v. Prudential Secs., Inc., 348 F.3d 704, 707 n.3 (8th Cir. 2003); Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Affidavits and exhibits are considered in evaluating the plaintiff's prima facie case. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072-73 (8th Cir. 2004). When deciding a motion to dismiss for lack of personal jurisdiction, the facts are viewed in the light most favorable to the plaintiff, and all factual conflicts are resolved in the plaintiff's favor. Lakin, 348 F.3d at 706.

Personal jurisdiction over a non-resident defendant is appropriate only where the requirements of the forum state's long-arm statute and of due process are satisfied. Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003). Because the Missouri long-arm statute authorizes the exercise of jurisdiction over

non-residents to the extent permissible under the Due Process Clause, the issue in this case is whether subjecting Dr. White to suit in Missouri comports with due process.  Romak USA, Inc., 384 F.3d at 984; Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002)); see also State ex rel. Deere and Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970)(en banc) (the "ultimate objective [of the long-arm statute] was to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States").

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Dever, 380 F.3d at 1073; Burlington Industries, Inc. v. Maple Industries, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).  The U.S. Supreme Court has set forth two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction.  Dever, 380 F.3d at 1073. Under general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue did not arise out of defendant's activities directed at the forum.  Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).

Specific jurisdiction enables a court to hear a lawsuit only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.    <u>Dever</u>, 380 F.3d at 1073 (citing <u>Helicopteros</u>, 466 U.S. at 414).

Five factors are considered in evaluating the minimum contacts required by Due Process Clause:

> (1)  the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.  The first three factors are closely related and are of primary importance, while the last two factors are secondary.

<u>Pecoraro</u>, 340 F.3d at 562.  The third factor, the relationship between the cause of action and the defendant's contacts with the forum state, is crucial to the specific jurisdiction determination.  <u>Burlington Industries, Inc.</u>, 97 F.3d at 1102-03.

"In order to establish minimum contacts within the forum state in a medical malpractice case, a plaintiff must show that the health care provider has taken some act by which it purposefully avails itself of the privilege of conducting business within the forum state."  <u>Mello v. Giliberto</u>, 73 S.W.3d 669, 676 (Mo. Ct. App. 2002); see <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (the critical question is whether a defendant has purposefully availed himself of the privilege of conducting activities in the forum state and should reasonably anticipate being haled

into court there); Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws").  The unilateral activity of those claiming a relationship with the nonresident defendant is not sufficient to establish minimum contacts with the forum state.  Hanson, 357 U.S. at 253.  "It is not enough that the injured patient have suffered an effect in the forum state or that the health care provider knew an effect would be suffered in the forum state."  Mello, 73 S.W.3d at 676 (citations omitted).  Jurisdiction under the Due Process Clause is appropriate only where a defendant has contacts with the forum state that are more than random, fortuitous, or attenuated.  Burger King Corp., 471 U.S. 462, 475 (1985).

### III.  *Personal Jurisdiction Analysis*

Dr. White's contacts with Missouri, for the purpose of this Order, consist of a single, unsolicited telephone call from Dr. Lockhert, the attending physician treating Lightfoot at Twin Rivers.  Telephone or mail correspondence between the defendant and the forum is not ordinarily sufficient to satisfy due process requirements under Missouri law.  E.g., Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (telephone contacts "are not ordinarily sufficient by themselves to support the exercise of personal jurisdiction with respect to a defendant"); Johnson Heater

Corp. v. Deppe, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002) (four telephone calls, mailings, and facsimile transactions initiated by defendant found insufficient to create a substantial connection with Missouri and satisfy due process); Mead v. Conn, 845 S.W.2d 109, 112-113 (Mo. Ct. App. 1993) (finding insufficient Missouri contacts where defendant doctor from Kansas used telephone lines to send greater than fifty EKG tests to Missouri for analysis over several years). Based on controlling precedent, Dr. White's single telephone contact with Dr. Lockhert in Missouri weighs against the exercise of personal jurisdiction.

Viewing Dr. White's contacts through the Eighth Circuit's five-factor minimum contacts analysis also compels the conclusion that Dr. White's contacts are insufficient for the exercise of personal jurisdiction. Because Dr. White discussed medication options at the unsolicited request of Dr. Lockhert, Lightfoot contends that Dr. White practiced medicine in the State of Missouri. Further, Lightfoot contends that the nature and quality of the Dr. White's contacts, and the relationship between those contacts, the forum and the cause of action, are sufficient to satisfy the due process requirements. However, the Missouri Supreme Court decision in State ex rel. Sperandio v. Clymer, 581 S.W.2d 377 (Mo. 1979) (en banc) ("Sperandio II"), does not support Lightfoot's contention and is persuasive in this case.

In Sperandio II, a physician in Missouri wrote an unsolicited letter to a nonresident physician in Utah to seek advice concerning a procedure used to treat a Missouri patient. Id. at 378-79. The nonresident physician suggested techniques, drew on the provided X-rays, and, without charging a fee, returned the information with a letter to the Missouri physician. Id. at 379. The Missouri Supreme Court initially held that Missouri courts could exercise personal jurisdiction over the Utah physician. See State ex rel. Sperandio v. Clymer, 568 S.W.2d 935 (Mo. 1978) (en banc) ("Sperandio I"). However, the U. S. Supreme Court vacated that judgment and remanded the case for reconsideration in light of Kulko v. Superior Court of California, 436 U.S. 84 (1978). Sperandio II, 581 S.W.2d at 380. In Kulko, the U.S. Supreme Court emphasized that the unilateral action of those who claim some relationship with a nonresident cannot satisfy the due process requirement. 436 U.S. at 93-94.

The facts of this case are analogous to Sperandio II. Here, Dr. Lockhert made an unsolicited phone call to Dr. White, a nonresident physician. Dr. Lockhert sought advice concerning Lightfoot's condition and treatment options. Dr. White, without charging a fee, recommended that Dr. Lockhert place Lightfoot on Rythmol to alleviate her condition. Dr. White's contact with Missouri is directly related to Lightfoot's causes of action for medical negligence and loss of consortium.

However, the unsolicited telephone call does not represent a purposeful availment under the standard applied to similar facts in <u>Sperandio II</u>. The phone call represented a unilateral act by Dr. Lockhert from the Missouri forum. Dr. White could not reasonably anticipate being haled into Missouri courts when he responded to the unsolicited call for consultation in treating a hospitalized patient.

Missouri has a great interest in providing its residents a forum for redressing injuries caused by out-of-state actors. <u>See</u> <u>Burger King Corp.</u>, 471 U.S. at 473 (a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors); <u>Aylward</u>, 122 F.3d at 618. It may also be, as Lightfoot alleges, that the distance from Dr. White's home and the courthouse is not an inconvenience to Dr. White. But the state interest and convenience factors of the Eighth Circuits five-factor test are secondary. <u>Pecoraro</u>, 340 F.3d at 562. Here, these secondary factors yield to the lack of any purposeful act by Dr. White directed toward the Missouri forum.

### IV. Conclusion

Based on the unsolicited nature of Dr. White's contacts with this forum, I do not have personal jurisdiction over Lightfoot's medical negligence and loss of consortium claims against Dr. White. Dr. White did not purposefully avail himself

to the privileges of Missouri laws by practicing medicine within Missouri.  Instead,
Dr. White's contact with Missouri resulted from the unilateral activity of Dr.
Lockhert.  Due process does not permit Dr. White to be haled into court in this
forum.  If Lightfoot wishes to pursue her claim against Dr. White, she may do so in
Arkansas.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for lack of
personal jurisdiction [#30] is **GRANTED**. Plaintiffs' claims against Anthony T.
White, M.D. are **dismissed**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this <u>18th</u> day of August, 2006.